# EXHIBIT A

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement") is made and entered into as of January 12, 2006, by and between (1) GERALD K. SMITH, the Plaintiff, as Plan Trustee (the "Trustee") under the Debtors' Third Amended Plan Dated May 3, 2000, in the Jointly Administered Chapter 11 Bankruptcy Cases of BCE West L.P., Boston Chicken, Inc., BC Real Estate Investments, Inc. and Affiliates ; (2) MERRILL LYNCH & CO., INC., a Delaware corporation, and its subsidiary, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, a Delaware corporation; (3) DEUTSCHE BANK SECURITIES INC., a Delaware corporation formerly known as Deutsche Bank Alex. Brown; (4) MORGAN STANLEY & CO. INCORPORATED, a Delaware corporation ((2), (3), and (4) referred to herein collectively as "THE "UNDERWRITERS"); and (5) PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP ("PWR") (collectively, the "Parties").

## DEFINITIONS

As used in this Agreement, the following terms shall have the defined meanings set forth below:

1. The terms "Claim" or "Claims" mean all claims, causes of action, complaints, suits, debts, liens, judgments, obligations, liabilities, demands, losses, damages, costs and expenses (including attorneys' fees and expenses) of any kind, character or nature whatsoever, whether based in law or in equity, on federal, state, local, foreign, statutory or common law, or any other law, rule or regulation, or whether class, individual, derivative or direct, accrued or unaccrued, asserted or unasserted, known or unknown, concealed or hidden, foreseen or

unforeseen, matured or not matured, fixed or contingent, whether direct or for indemnity, reimbursement, or contribution (any of the foregoing being herein referred to as a "Claim" and all of the foregoing being herein referred to collectively as "Claims").

2.      The term "Court" means the United States District Court for the District of Arizona.

3.      The term "Debtors" means Chapter 11 debtors BCE West L.P., Boston Chicken, Inc. ("BCI"), BC Real Estate Investments, Inc. and Affiliates.  "Affiliates" means any corporation, limited liability company, joint venture or partnership in which BCI directly or indirectly owns or previously owned twenty per cent (20%) or more of the equity interest of such entity.

4.      The term "Litigation" means that action pending in the U. S. District Court for the District of Arizona captioned *Smith v. Arthur Andersen, L.L.P., et al.*, Case No. CIV-01-218-PHX-PGR, CIV-01-246-PHX-EHC, CIV-02-1162-PHX-PHG, CIV-02-1248-PHX-PGR (Consolidated).

5.      The term "Other Defendants" means the former defendants and third-party defendants in the Litigation and, with respect to entities, includes related parties and affiliates, and includes PricewaterhouseCoopers, L.L.P.; Bell, Boyd & Lloyd LLC; Pedersen & Houpt; Scott A. Beck and his marital community and spouse; Mark A. Stephens and his marital community and spouse; Peer Pedersen and his marital community and spouse; Saad J. Nadhir and his marital community and spouse; Arthur Andersen LLP; Bank of America Corporation; Bank of America NT&SA; BA Securities, Inc; General Electric Capital Corporation; GE Capital

Markets Group, Inc.; and all individuals or entities with whom the Trustee has or has had tolling agreements.

6.    The term "TOTAL SETTLEMENT AMOUNT" means the amount of One Hundred Eighty-Million dollars and no cents ($180,000,000). The UNDERWRITERS and PWR shall contribute to the TOTAL SETTLEMENT AMOUNT in their respective amounts set forth in a separate letter to the Trustee, dated as of the same date as this Settlement Agreement.

7.    The term "UNDERWRITER RELEASED PARTIES" means

a)    MERRILL LYNCH & CO., INC., a Delaware corporation, and its subsidiary, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, a Delaware corporation;

b)    DEUTSCHE BANK SECURITIES INC., a Delaware corporation formerly known as Deutsche Bank Alex. Brown;

c)    MORGAN STANLEY & CO. INCORPORATED, a Delaware corporation; and

d)    each of the investment banks or other financial institutions who purchased and resold BCI securities in any public offering including without limitation each of the entities listed in Exhibit C,

and all of its or their past and present firms, and, of each of the foregoing, all of its or their respective past and present subsidiaries, parents, successors and predecessors, affiliates, related entities and divisions including without limitation Deutsche Bank AG, a German corporation and Morgan Stanley, a Delaware corporation, and all of its or their respective current and former managing directors, partners, members, principals, managing or other agents, management

3

personnel, officers, directors, shareholders, administrators, servants, employees, staff, consultants, advisors, attorneys, accountants, representatives, successors and assigns, along with the heirs, spouses, executors, administrators, insurers, reinsurers, representatives, estates, successors and assigns of any such person or entities.

8.     The term "PWR RELEASED PARTIES" means PWR and all of its predecessor firms, and, of each of the foregoing, all of their respective past and present subsidiaries, parents, successors and predecessors, affiliates, related entities and divisions, and all of their respective current and former partners, members, counsel, principals, participating principals, associates, directors, managing or other agents, management personnel, officers, directors, shareholders, administrators, servants, employees, staff, consultants, advisors, attorneys, accountants, representatives, successors and assigns, along with the heirs, spouses, executors, administrators, insurers, reinsurers, representatives, estates, successors and assigns of any such person or entities.

9.     The term "UNDERWRITER/PWR RELEASED PARTIES" means all persons or entities who are either UNDERWRITER RELEASED PARTIES or PWR RELEASED PARTIES.

10.     The terms "Released Claim" or "Released Claims" means all Claims (as defined in Definition paragraph 1 of this Agreement above) and Unknown Claims (as defined in Section 7 of this Agreement below), that may have existed from the beginning of time to the date of this Agreement arising out of or relating to any acts, omissions, advice, counsel, professional services, consultations, prospectuses, registration statements, or other public filings, equity or debt offerings, analyst reports, statements, dealings or conduct by UNDERWRITER/PWR

RELEASED PARTIES, or any of them, in connection with or on behalf of or in any way relating to the Debtors or their respective bankruptcy estates, including without limitation claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, collusive tort, civil conspiracy, acting in concert, fraud, fraudulent transfer or conveyance, fraudulent concealment, professional malpractice/negligence, negligence, negligent misrepresentation, misrepresentation, breach of express or implied contract, any form of damages, any form of relief sounding in deepening insolvency, restitution, preferential transfer, or aiding and abetting or any other form of civil violation of Colorado Revised Statutes §§ 18-17-104, 18-17-106 and related statutory provisions, and any other claims that

      (i)     are based in whole or in part upon any allegation that was made or could have been made by the Trustee, as Trustee for the Debtors, any of the Debtors or any of the Debtors' bankruptcy estates in any capacity and in any forum against any of the UNDERWRITER/PWR RELEASED PARTIES, whether or not any jurisdictional or other bar existed;

      (ii)    are based in whole or in part on any allegation that any of the UNDERWRITER/PWR RELEASED PARTIES is liable to any of the Other Defendants (as defined in this Agreement) for contribution, indemnification, reimbursement, or otherwise, whether at law, in equity, by agreement or otherwise, for any loss or damages allegedly suffered or incurred by any of the Other Defendants arising from or relating to any of the UNDERWRITER/PWR RELEASED PARTIES' dealings with (a) the Debtors or their respective bankruptcy estates; or (b) any of the Other Defendants in connection with any of the

UNDERWRITER/PWR RELEASED PARTIES' dealings with the Debtors or their respective bankruptcy estates;

(iii)    constitute property of the Debtors' respective estates (within the meaning of 11 U.S.C. §541); or

(iv)    give rise to a right of UNDERWRITER/PWR RELEASED PARTIES to seek contribution, reimbursement, or indemnity from any one or more of the Debtors or their respective bankruptcy estates, whether at law, in equity, by agreement or otherwise.

## W I T N E S S E T H:

**WHEREAS**, the Trustee is the Trustee in various Chapter 11 bankruptcy cases that currently are pending in the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court"), which cases are being jointly administered in the Bankruptcy Court as Bankruptcy Cases No. 98-12547 ECF CGC through 98-12570 ECF CGC (collectively, the "Bankruptcy Case"); and

**WHEREAS**, pursuant to the terms of the Third Amended Chapter 11 Plan Dated May 3, 2000, in the Bankruptcy Case, the Trustee is charged with, among other things, the post-confirmation administration and prosecution against third-parties of claims and causes of action that prior to confirmation constituted property of the Debtors' respective bankruptcy estates; and

**WHEREAS**, the Trustee, on behalf of the Debtors and their respective bankruptcy estates, has asserted various claims and causes of action against THE UNDERWRITERS and/or PWR, and others, in the Litigation; and

**WHEREAS**, THE UNDERWRITERS and PWR have denied and continue to deny any liability to the Debtors, their respective bankruptcy estates, or the Trustee and have raised defenses with regard to all such alleged claims and causes of action; and

**WHEREAS**, on the terms and subject to the conditions contained herein, the Trustee, on the one hand, and THE UNDERWRITERS and PWR, on the other, desire to compromise and settle all of the Released Claims;

**NOW, THEREFORE**, in consideration of the mutual covenants, warranties, representations, and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Trustee, PWR, and THE UNDERWRITERS, intending to be legally bound, hereby agree as follows:

1. **Incorporation of Recitals and Definitions.**

    The foregoing recitals and Definitions are incorporated herein by this reference as material terms of this Settlement Agreement.

2. **Settlement Payment**.

    On or before Wednesday, January 25, 2006, THE UNDERWRITERS and PWR shall either transfer their respective shares of the TOTAL SETTLEMENT AMOUNT, by wire transfer, to the following account:

    Bank of America NT&SA
    ABA # 071000039
    Address:       231 S. LaSalle, Chicago, IL  60697
    Account No.:  8666912816
    Boston Market Holdback Account
    Reference [Boston Market Settlement]

or, effective Thursday, January 26, 2006, THE UNDERWRITERS and PWR will each separately accrue, per day, an amount equal to .00021918 times any unpaid portion of their

7

respective share of THE TOTAL SETTLEMENT AMOUNT until the date of payment. This non-compounded amount will be added to any unpaid portion of the referenced shares in THE TOTAL SETTLEMENT AMOUNT.

Should the Court not enter the Bar Order by Monday, February 13, 2006, or should the Court deny the Motion for Entry of the Approval and Bar Order at any time, then THE UNDERWRITERS and PWR will have the right, at their respective election, to cancel this Agreement. Should either so elect, the electing party will receive back from the Trustee the monies it or they have deposited in the above referenced account and all interest thereon. Should either THE UNDERWRITERS or PWR, at the time of this election, have not paid any portion of their respective shares into the above-referenced account, then their obligation both to transfer that portion or otherwise to make the referenced accrual payments will cease and all such amounts will no longer be due and owing.

Subject to the foregoing conditions, THE UNDERWRITERS and PWR shall have the right, jointly, to request of the Court a hearing date on the Motion to Enter Approval and Bar Order on any date they elect, provided that such date is on or before February 9, 2006. The Trustee and his counsel will cooperate fully in the scheduling of said hearing and, if THE UNDERWRITERS and PWR so elect, will make and facilitate a request that the Court enter its order on the referenced motion without hearing.

3.     **Approval and Bar Order.**

       A.     Approval and Bar Order.

As soon as practicable after the execution and delivery of this Agreement, the Trustee, THE UNDERWRITERS, and PWR shall file in the Litigation and prosecute, pursuant to the

foregoing terms,  a motion, in the form attached hereto as Exhibit "B," that seeks the entry by the Court of an approval and bar order in the form attached hereto as Exhibit "A" (the "Approval and Bar Order").

          B.       <u>Terms of Bar Order; Judgment Reduction Credit.</u>

The Approval and Bar Order shall contain, among other things, a permanent bar order prohibiting any of the Other Defendants, or any other person or entity from asserting or continuing to prosecute any Released Claim against any of the UNDERWRITER/PWR RELEASED PARTIES.  It is the intent of the Parties to this Agreement through such Bar Order to provide the UNDERWRITER/PWR RELEASED PARTIES with comprehensive, full and complete finality with regard to any and all Released Claims that could be asserted against them as a result of their prior dealings with the Debtors or the Debtors' respective bankruptcy estates. If the Approval and Bar Order entered by the Court does not contain all the terms of the Bar Order as described herein, then this Agreement, and the obligations of the Trustee, THE UNDERWRITERS, and PWR contained herein, shall at the election of any of the Parties be voidable and of no further force or effect.

In order to bar any Released Claims against the UNDERWRITER/PWR RELEASED PARTIES that arise from or relate to their prior dealings with the Debtors or the Debtors' respective bankruptcy estates, the Approval and Bar Order shall also provide with respect to any judgment that might be entered on any Released Claim in the Litigation, or any pending or future adversary proceeding, contested matter or civil action filed by the Trustee or otherwise on behalf of the Debtors or the Debtors' bankruptcy estates in which there is or may be a determination of

fault on the part of any of the UNDERWRITER/PWR RELEASED PARTIES, that the Other Defendants shall receive a pro rata judgment reduction credit.

In recognition of the payment of the TOTAL SETTLEMENT AMOUNT, and in light of the Parties' intent to provide the UNDERWRITER/PWR RELEASED PARTIES with comprehensive, full and complete finality with regard to any and all Released Claims that have been or could be asserted against them as a result of their prior dealings with the Debtor or the Debtor's respective bankruptcy estates, any resulting judgment reduction credit shall be applied so as to preclude recovery by any party for any amount of pro rata fault attributable to any of the UNDERWRITER/PWR RELEASED PARTIES.

With respect to each claim that goes to verdict in the Litigation or in any pending or future adversary proceeding, contested matter or civil action filed by the Trustee or otherwise on behalf of the Debtors or the Debtors' bankruptcy estates, the Trustee acknowledges that the verdict form should set forth the total amount of damages and, if the claim is susceptible to an allocation of fault, an allocation of fault, if any, among all of the defendants and any other designated non-parties, including THE UNDERWRITERS and PWR on all claims for which any fault could be allocated to any of the UNDERWRITER/PWR RELEASED PARTIES. Should the Trustee or anyone suing on behalf of the Debtors or the Debtors' bankruptcy estates receive a final monetary judgment in any such referenced litigation which then results in any person or entity being legally entitled to require such UNDERWRITER/PWR RELEASED PARTIES to make payment toward that judgment, the Trustee or such other person shall seek Court approval to reduce the judgment by an amount sufficient to result in such UNDERWRITER/PWR RELEASED PARTIES having no obligation toward the judgment.

4.    **Remaining Actions**.  The Trustee represents and warrants his only remaining actions are against ACE Insurance Company, Ltd., a/k/a ACE Bermuda Insurance, Ltd., and their agents and attorneys, and a claim against Reliance Insurance Co. (in liquidation) and pending adversary proceedings and contested matters in the Bankruptcy Court and, that apart from those actions he will not initiate or pursue any other claims, and that he has no tolling agreements with any other persons or entities that shall remain in effect.

5.    **Release of UNDERWRITER/PWR RELEASED PARTIES**.  Upon receipt of THE UNDERWRITERS' portion of the TOTAL SETTLEMENT AMOUNT, the Trustee, as Trustee and on behalf of each of the Debtors and each of the Debtors' respective bankruptcy estates, hereby releases, acquits, and forever discharges each of the UNDERWRITER RELEASED PARTIES from any and all Released Claims.  Upon the receipt of PWR's portion of the TOTAL SETTLEMENT AMOUNT, the Trustee, as Trustee and on behalf of each of the Debtors and each of the Debtors' respective bankruptcy estates, hereby releases, acquits, and forever discharges the PWR RELEASED PARTIES from any and all Released Claims.  This Agreement constitutes and is intended to be a full and complete release of each of the UNDERWRITER/PWR RELEASED PARTIES.

6.    **Release of the Trustee, the Debtors and the Debtors' Bankruptcy Estates**.

Upon the fulfillment of the conditions of settlement listed in Section 8 hereof, THE UNDERWRITERS (and those entities listed on Exhibit C to this Agreement) and PWR hereby release, acquit and forever discharge the Debtors, and the Debtors' bankruptcy estates, and each and every one of their past and present affiliates, shareholders, members, officers, directors, partners, principals, agents, insurers, servants, employees, representatives, the Trustee and

attorneys of the Trustee, solely in their respective capacities as such, from any and all claims that THE UNDERWRITERS (and those entities listed on Exhibit C to this Agreement) and PWR may have or claimed to have had in the past or which may hereafter arise out of, relate to, or be connected with any act or commission or omission of the Trustee, or any of the Debtors, or any of the Debtors' respective bankruptcy estates, relating to this Litigation or the Debtors or the Debtor's bankruptcy estates, existing or occurring prior to the date of this Agreement, based on facts then in existence, whether known or unknown, excluding, however, any rights, remedies, claims or defenses arising under or in connection with this Agreement.

7.   **Nature of the Release Given.**  "Unknown Claims" as used in this Agreement means any Claims that the Trustee, as Trustee and on behalf of each of the Debtors and each of the Debtors' respective bankruptcy estates, does not know or suspect to exist in his favor, whether directly or in a representative capacity, at the time of the release of the UNDERWRITER/PWR RELEASED PARTIES which, if known by him, might have affected his settlement with and release of the UNDERWRITER/PWR RELEASED PARTIES. The Trustee expressly understands principles of law which provide that a general release does not extend to claims which a creditor does not know or suspect to exist in his favor at the time of executing the release which, if known by him, would have materially affected his settlement with the defendant(s). With respect to any and all Released Claims, therefore, the Trustee stipulates and agrees that, as Trustee and on behalf of each of the Debtors and each of the Debtors' respective bankruptcy estates, he expressly waives any and all provisions, rights and benefits conferred by any law, or principle of common law, which is similar, such as California Civil Code §1542 and any similar or comparable provision that provide in substance:

12

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Trustee, as Trustee and on behalf of each of the Debtors and each of the Debtors' respective bankruptcy estates, may hereafter discover facts in addition to or different from those that he now knows or believes to exist or to be true with respect to the subject matter of the Released Claims, but the Trustee shall have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity existing or coming into existence in the future, including but not limited to conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Trustee, as Trustee and on behalf of each of the Debtors and each of the Debtors' respective bankruptcy estates, acknowledges that the foregoing waiver was separately bargained for and a material element of the settlement of which this release is a part.

8.     <u>**Conditions of the Settlement**</u>.

a.     As between the Trustee on the one hand and THE UNDERWRITERS on the other, this Settlement Agreement shall be subject to the following conditions and shall be cancelled and terminated unless:

(1)     The Court shall enter its Approval and Bar Order in the form attached hereto.

(2)     The Trustee has received THE UNDERWRITERS' portion of the TOTAL SETTLEMENT AMOUNT.

(3)     The Releases contained herein are effective and enforceable.

(4)     The Order of Dismissal of all claims against THE UNDERWRITERS has been entered by the Court.

Should any one or more of these conditions not be met, then as between the Trustee and THE UNDERWRITERS this Settlement Agreement and the Approval and Bar Order shall be null and void, and such parties shall be returned to their respective status prior to the execution of this Agreement.

b.     As between the Trustee on the one hand and PWR on the other, this Settlement Agreement shall be subject to the following conditions and shall be cancelled and terminated unless:

(1)     The Court shall enter its Approval and Bar Order in the form attached hereto.

(2)     The Trustee has received PWR's portion of the TOTAL SETTLEMENT AMOUNT.

(3)     The Releases contained herein are effective and enforceable.

(4)     The Order of Dismissal of all claims against PWR has been entered by the Court.

14

Should any one or more of these conditions not be met, then as between the Trustee and PWR this Settlement Agreement and the Approval and Bar Order shall be null and void, and such parties shall be returned to their respective status prior to the execution of this Agreement.

9.      **Non-Recourse.** Notwithstanding anything to the contrary contained herein, the Parties, for themselves and any other persons claiming by, through, or on behalf of them, acknowledge and agree that (i) in no event shall any person or entity other than THE UNDERWRITERS, in their corporate capacity have any personal liability with respect to THE UNDERWRITERS' obligations arising out of or relating to this Agreement; and (ii) in no event shall any person other than PWR, in its capacity as a limited liability partnership, have any personal liability with respect to PWR's obligations arising out of or relating to this Agreement.

10.     **Dismissal of THE UNDERWRITERS and PWR from the Litigation.** The Parties further agree as follows:

(a)      Within the later of two business days of the Trustee's receipt of transfer of THE UNDERWRITERS' portion of the TOTAL SETTLEMENT AMOUNT or one business day after entry by the Court of the Bar Order, the Trustee through his counsel, shall execute and deliver to counsel for THE UNDERWRITERS a Stipulated Motion to Dismiss With Prejudice necessary to dismiss THE UNDERWRITERS from the Litigation with prejudice, in substantially the form attached hereto as Exhibit D.  Counsel for THE UNDERWRITERS and the Trustee shall thereupon promptly file such Motion with the Court.

(b)      Within the later of two business days of the Trustee's receipt of transfer of PWR's portion of the TOTAL SETTLEMENT AMOUNT or one business day after entry by the Court of the Bar Order, the Trustee through his counsel, shall execute and deliver to counsel

15

for PWR a Stipulated Motion to Dismiss With Prejudice necessary to dismiss PWR from the Litigation with prejudice, in substantially the form attached hereto as Exhibit E. Counsel for PWR and the Trustee shall thereupon promptly file such Motion with the Court.

**11.     No Prior Transfer**.  The Trustee, THE UNDERWRITERS, and PWR hereby mutually represent and warrant that there has been no assignment, sale or other transfer, disposition or encumbrance of any interest in any of the Released Claims hereinbefore released and forever discharged.

**12.     Due Authorization**.  The Parties to this Agreement that are not individuals hereby represent and warrant that the individuals signing this Agreement on their behalf are duly authorized to enter into and fully competent to do so.  The Trustee represents and warrants that he has authority to enter into and perform this settlement Agreement and has secured the required approval of the Plan Oversight Committee, as that term is defined in the Debtors' Third Amended Plan Dated May 3, 2000 (the "Plan Oversight Committee"), and that no further approvals are required in the Bankruptcy Case.

**13.     Assignment, Predecessors, Successors and Assigns**.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their legal representatives, predecessors, successors and assigns.

**14.     No Liability**.  The Parties each deny liability to the other, and neither the payment of money nor the performance of any other matters contemplated hereby or provided for herein shall in any way or manner be construed as an admission of any allegation, fact or liability or any act of wrongdoing.   The Parties further understand and agree that no fact pertaining to the making or consummation of this Agreement, nor the Agreement itself, shall be admissible in any

proceeding or cause of action (except an action to enforce this Agreement) as an admission of any liability or responsibility by any Party.

  **15.** <u>**Confidentiality.**</u>  The Parties recognize that  the Motion for Entry of the Bar Order requires Court approval.  Notwithstanding this process, the Trustee agrees that he and his counsel will not, except to the extent required by applicable law, (i) discuss, comment on, announce, publicize, disclose, describe, characterize, disseminate or otherwise reveal in any fashion to any person, entity, court or tribunal (other than the Court, the other parties to this Litigation, or a released party or a releasing party hereunder) the nature, terms or content of the settlement or this Agreement, including without limitation, the existence of the Agreement, the amount or nature or fact of any payment made, the terms and conditions of the Agreement or the releases contained herein or any other fact, description or opinion regarding this settlement or the Agreement, (ii) otherwise make any statement the purpose, intent, suggestion or meaning of which is that any of the UNDERWRITER/PWR RELEASED PARTIES were liable for, admitted liability or responsibility for, or otherwise committed, any improper act or omission in regard to the subject matter of this Agreement or the Released Claims or otherwise; and the Trustee agrees to direct his attorneys and agents to comply with the provisions of this Section or (iii) use the Agreement or the fact of the Agreement for any purpose other than the effectuation of its terms..

  **16.** <u>**Non-Publicity.**</u>  The Trustee agrees that he and his counsel shall not seek to publicize this Agreement or the terms and conditions hereof in the press or other media, whether through an affirmative press release, initiating contact with the media regarding the settlement, or discussing the details of the settlement with the media if contacted.  If contacted by the press

or other media, the Trustee and his counsel agree to confine their statements to a brief statement that the matter has been settled to the satisfaction of the parties.

17.    **Reliance upon Representations and Warranties.**  THE UNDERWRITERS and PWR have relied upon the representations and warranties by the Trustee set forth in the Agreement as a material inducement in entering into this Agreement.

18.    **Each Party Bears Own Costs.**  The Parties hereby agree that each Party shall be solely responsible for its own attorneys' fees and costs incurred in connection with the Litigation and the negotiations leading to the execution of this Agreement.

19.    **Agreement Pleaded as Defense.**  This Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding which may be instituted, prosecuted or attempted for, upon or in respect of any of the claims released hereby.  The Parties agree that any such proceeding would cause irreparable injury to the Party against whom it is brought and that any court with personal and subject matter jurisdiction may enter an injunction restraining prosecution thereof.

20.    **Construction.**  The parties hereto hereby mutually acknowledge and represent that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same.  The parties hereto further hereby mutually acknowledge that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any party, but rather shall be given a fair and reasonable interpretation, based on the plain language of the Agreement and the expressed intent of the parties.

18

21.     **Captions and Headings**.  The Parties agree that the captions and headings contained in this Agreement are for convenience only and shall not be deemed to constitute a part of this Agreement.

22.     **Entire Agreement**.  This Agreement and the documents contemplated hereby constitute the entire agreement and understanding between the parties relating to the subject matter contained herein, and as such terminate, supersede, and replace any and all prior arrangements, understandings, representations, promises, inducements, or other communications, whether written or oral, between the Parties.  The Parties agree and represent that no oral understandings, statements, promises, or inducements contrary or supplementary to the terms of this Agreement exist.  This Agreement may not be altered, amended or modified in any respect or particular whatsoever except by a writing duly executed by each of the parties hereto and unequivocally indicating their intent to modify the Agreement.

23.     **If Agreement Not Effective.**  If this Agreement does not become effective for any reason, it shall be deemed negotiation for settlement purposes only and will not be admissible in evidence or usable for any purpose whatsoever.

24.     **Enforceability of Agreement**.  Each Party represents to the other Party that this Agreement constitutes a valid, binding, and enforceable obligation of each Party, its terms are lawful and fair, and it constitutes an equitable settlement of their differences.  The Parties agree never to revoke or contest the validity or enforceability of this Agreement.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement other than the provisions of Sections 2 and 5 (the Settlement Payment and the Release by the Trustee) is held to be invalid,

19

illegal or unenforceable in any respect, in whole or in part, under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision or any other jurisdiction, but this Agreement shall be deemed modified and reformed in such jurisdiction, and shall be construed and enforced in such jurisdiction as if such invalid, illegal or unenforceable provision had never been contained therein, and the remaining provisions, as modified or reformed, shall remain in full force and effect in such jurisdiction.  If Section 2 or Section 5 is held to be invalid, illegal or unenforceable in any respect, in whole or in part, then the entire Agreement as to either THE UNDERWRITERS or PWR shall be deemed void and rescinded at their individual election..

25.     **Counterparts**.  This Agreement may be executed in several counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument.  The Parties agree that a signature sent by facsimile to counsel for the other Party shall have the same force and effect as an original signature.

26.     **Governing Law**.  This Agreement shall be governed, construed and enforced according to the laws of the State of Colorado without regard to conflicts of laws principles.

27.     **Waiver of Claims and Defenses**.  The Trustee, THE UNDERWRITERS, and PWR hereby agree that this Agreement shall not be subject to any claim of fraud, duress, deceit, mistake of law or mistake of fact, and that it expresses the full and complete settlement of the Parties.

28.     **Cooperation of the Parties**.  The Parties agree to cooperate in good faith, and to use their best efforts, to effect all of the terms of this Agreement, including, without limitation,

entry of the approval order containing the bar order and the judgment reduction credit as stated above.

29.    **Other Releases**. THE UNDERWRITERS and PWR will provide a release of any and all Claims related to their relationship with the Debtors or the Debtors' respective bankruptcy estates to any party who previously settled with the Trustee, provided such party agrees to release the UNDERWRITER/PWR RELEASED PARTIES on mutually acceptable terms. And THE UNDERWRITERS and PWR shall provide a release of any and all claims related to their relationship with the Debtors or the Debtors' respective bankruptcy estates to Bank of America, and its related entities, and GE Capital Corp., and its related entities, provided such released parties agree to release THE UNDERWRITERS and PWR on mutually acceptable terms.

30.    **Court Retains Jurisdiction to Enforce This Agreement.**  The Trustee, THE UNDERWRITERS, and PWR agree that in their stipulation and proposed order dismissing with prejudice the Trustee's claims, the parties will request that the Court retain jurisdiction to enforce the terms of this Agreement under the principles set forth in *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994).

*    *    *

21

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

Dated: January 13, 2006

**GERALD K. SMITH**, as and only as Plan Trustee under the Third Amended Plan Dated May 3, 2000, in the jointly administered Chapter 11 Bankruptcy Cases of BCE West L.P., et al.

Dated: January ___, 2006

**MERRILL LYNCH & CO., INC., a Delaware corporation**

By:_____
Name:

Position:

Dated: January ___, 2006

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, a Delaware corporation**

By:_____
Name:

Position:

Dated: January ___, 2006

**DEUTSCHE BANK SECURITIES INC., a Delaware corporation, formerly known as Deutsche Bank Alex. Brown**

By:_____
Name:

Position:

22

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

Dated: January ___, 2006

**GERALD K. SMITH**, as and only as Plan Trustee under the Third Amended Plan Dated May 3, 2000, in the jointly administered Chapter 11 Bankruptcy Cases of BCE West L.P., et al.

Dated: January _13_, 2006

**MERRILL LYNCH & CO., INC.**, a Delaware corporation

By: _____
Name: Barry J. Mandel
Position: Senior Vice President and Co-head Global Litigation, Employment and Regulatory Affairs

Dated: January _13_, 2006

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED**, a Delaware corporation

By: _____
Name: Barry J. Mandel
Position: Senior Vice President and Co-head Global Litigation, Employment and Regulatory Affairs

Dated: January ___, 2006

**DEUTSCHE BANK SECURITIES INC.**, a Delaware corporation, formerly known as Deutsche Bank Alex. Brown

By: _____
Name:

Position:

22

IN WITNESS WHEREOF and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date first above written.

Dated: January ___, 2006

GERALD K. SMITH, as and only as Plan Trustee
under the Third Amended Plan Dated May 3, 2000,
in the jointly administered Chapter 11
Bankruptcy Cases of BCE West L.P., et al.

Dated: January ___, 2006

MERRILL LYNCH & CO., INC., a Delaware
corporation

By:_____
Name:
Position:

Dated: January ___, 2006

MERRILL LYNCH, PIERCE, FENNER &
SMITH, INCORPORATED, a Delaware
corporation

By:_____
Name:
Position:

Dated: January 13, 2006

DEUTSCHE BANK SECURITIES INC., a
Delaware corporation, formerly known as
Deutsche Bank Alex. Brown

By: _Robert Khuzami_____
Name: Robert Khuzami
Position: Managing Director

22

Dated: January 12, 2006

MORGAN STANLEY & CO.
INCORPORATED, a Delaware corporation

By:
Name: Soo-Mi Lee

Position: Executive Director

Dated: January 13, 2006

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:
Name: ALFRED D. YOUNGWOOD

Position: CHAIR

25

*PM*

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GERALD K. SMITH, as Plan Trustee for and on behalf of the Estates of Boston Chicken, Inc., et al. | CV-01-218-PHX-PGR<br>CV-01-246-PHX-EHC<br>CV-02-1162-PHX-PGR<br>CV-02-1248-PHX-PGR |
| Plaintiff, | (Consolidated) |
| v. | |
| ARTHUR ANDERSEN LLP, a limited liability partnership, et al. | **APPROVAL AND BAR ORDER** |
| Defendants. | |
| Scott A. Beck, et al., | |
| Third-Party Plaintiffs, | |
| vs. | |
| Bank of America Corporation, | |
| Third-Party Defendants. | |

On January 13, 2006, Plaintiff and Defendants Merrill Lynch & Co., Inc. and its subsidiary Merrill Lynch, Pierce, Fenner & Smith Inc., Deutsche Bank Securities, Inc. f/k/a Deutsche Bank Alex. Brown ("Alex. Brown"), Morgan Stanley & Co. Incorporated (these four Defendants are collectively referred to in this Order as the "Underwriters"), and Paul, Weiss, Rifkind, Wharton & Garrison LLP ("PWR"), filed in this Court a Joint Motion to Approve Compromise and Settlement and to Enter Permanent Bar Order with respect to the

Settlement Agreement signed by Plaintiff, the Underwriters and PWR as of January 12, 2006 ("Settlement Agreement").  Pursuant to the Joint Motion, Plaintiff, the Underwriters, and PWR sought a determination from the Court that the terms and conditions of the Settlement Agreement were reached in good faith and are fair, reasonable, and adequate for the settlement of claims which could be asserted against the Underwriters and PWR in this action by the Plaintiff as Plan Trustee ("Trustee") as authorized by Debtor's Third Amended Chapter 11 Plan, Dated May 3, 2000, in the Jointly Administered Chapter 11 Bankruptcy Cases of BCE West L.P., Boston Chicken, Inc. ("BCI"), BC Real Estate Investments, Inc. and Affiliates (BCI, BC Real Estate Investments, Inc., and Affiliates, collectively, the "Debtors") identified as Bankruptcy Cases Nos. 98-12547 ECF CGC through 98-12570 ECF CGC (collectively "the Bankruptcy Case"); there being no other non-settling defendants left in this action and notice having been served by hand on counsel for all of the Other Defendants (as that term is defined in the Settlement Agreement); the Court having noted the absence of any objections filed by the Other Defendants and all matters submitted to it; and all capitalized terms having the same meaning as set forth and defined in the Settlement Agreement;

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Court has jurisdiction over the subject matter of this Action and the Settlement Agreement.

2.      The Court finds that notice of the Settlement Agreement and proposed Approval and Bar Order was given to all of the Other Defendants.  The Court further finds that the notice was reasonable and apprised the Other Defendants of the pendency of the Settlement Agreement and Approval and Bar Order and afforded them the opportunity to present objections.

3.      The Court finds that: a) no Other Defendant filed an opposition to the Settlement Agreement or to the proposed form of Approval and Bar Order within the time allowed by law; b) Plaintiff has authority under the Debtor's Third Amended Chapter 11 Plan Dated May 3, 2000 to enter into the Settlement Agreement; and c) the Settlement Agreement is approved and adjudicated to be fair, reasonable and adequate with respect to the Trustee,

Gibson, Dunn &
Crutcher LLP

2

the Debtor, and the Debtor's bankruptcy estates, the Underwriters, PWR, and the Other Defendants. The Settlement Agreement, including the definitions contained therein, is incorporated by reference in this Approval and Bar Order.

4.    The Settlement Agreement is adjudicated to be a settlement entered in good faith.

5.    The Other Defendants and all other persons or entities are permanently barred and enjoined from asserting or continuing to prosecute, either directly or in any other capacity, any and all Released Claims (as defined in the Settlement Agreement) whether directly, indirectly, derivatively, representatively or in any other capacity (excluding claims to enforce the terms of the Settlement Agreement) against the UNDERWRITER/PWR RELEASED PARTIES (as defined in the Settlement Agreement). The Released Claims are compromised, settled and released as against the UNDERWRITER/PWR RELEASED PARTIES by virtue of this Approval and Bar Order.

6.    By virtue of the "good faith" nature of the Settlement Agreement approved by this Court, the UNDERWRITER/PWR RELEASED PARTIES are discharged from all Claims for contribution, indemnification, reimbursement or the like that have been or may later be brought by or on behalf of any of the Other Defendants based upon, relating to or arising out of the Released Claims. Accordingly, the Other Defendants and all other persons and entities claiming under or by the Other Defendants are permanently barred, enjoined and restrained from asserting or continuing to prosecute any Claim that constitutes a Released Claim, however styled, whether for contribution, indemnity, reimbursement or otherwise and whether arising under state, federal or common law, against any of the UNDERWRITER/PWR RELEASED PARTIES based upon, arising out of or related to the work performed by any of the UNDERWRITER/PWR RELEASED PARTIES on behalf of, or in connection with their relationship with, the Debtors or the Debtors' bankruptcy estates.

7.    With respect to any judgment that might be entered on any cause of action or claim in this action, or any pending or future adversary proceeding, contested matter or civil action filed by the Trustee or otherwise on behalf of the Debtors or the Debtors' bankruptcy

estates which is based upon, arises out of, or relates to the work performed by any of the
UNDERWRITER/PWR RELEASED PARTIES on behalf of, or in connection with their
relationship with, the Debtors or the Debtors' bankruptcy estates, in which there is or may be
a determination of fault on the part of any of the UNDERWRITER/PWR RELEASED
PARTIES, including but not limited to a determination of fault based on joint and several
liability, the Other Defendants shall receive a pro rata judgment reduction credit.  In
recognition of the Settlement Payment, and in light of the Trustee's, the Underwriters' and
PWR's intent to provide the UNDERWRITER/PWR RELEASED PARTIES with
comprehensive, full and complete finality with regard to any and all Claims that have been or
could be asserted against them as a result of their conduct or prior dealings with the Debtor or
the Debtors' respective bankruptcy estates, any resulting judgment reduction credit shall be
applied so as to preclude recovery by any party for any amount of pro rata fault attributable to
any UNDERWRITER/PWR RELEASED PARTIES.  With respect to each claim that goes to
verdict in the Litigation or in any pending or future adversary proceeding, contested matter or
civil action filed by the Trustee or otherwise on behalf of the Debtors or the Debtors'
bankruptcy estates, the verdict form shall set forth the total amount of damages and an
allocation of fault, if any, among all of the defendants and any other responsible persons or
entities, including, if and as applicable, each of the UNDERWRITER/PWR RELEASED
PARTIES. The Trustee shall not seek to collect any amount on any judgment against any of
the Other Defendants to the extent, and only to the extent, that any such Other Defendant has
a right under applicable law of contribution or indemnification against any of the
UNDERWRITER/PWR RELEASED PARTIES.  Should the Trustee or anyone suing on
behalf of the Debtors or the Debtors' bankruptcy estates receive a final monetary judgment
which then results in any person or entity being legally entitled to require such
UNDERWRITER/PWR RELEASED PARTY to make payment toward that judgment, the
Trustee or such other person shall seek Court approval to reduce the judgment by an amount
sufficient to result in such UNDERWRITER/PWR RELEASED PARTY having no
obligation toward the judgment.  Should this Bar Order for any reason be reversed or

Gibson, Dunn &
Crutcher LLP

modified due to any appeal, challenge, motion to reconsider or other proceeding, at any trial or other proceeding involving the Released Claims at which the Trustee or anyone suing on behalf of the Debtors or the Debtors' bankruptcy estates is awarded damages, the total damages awarded the Trustee or such other persons shall be reduced in proportion to the percentage of fault, if any, allocated to any UNDERWRITER/PWR RELEASED PARTY at such trial or other proceeding. Nothing contained in this paragraph shall prevent the Trustee from seeking to enforce a judgment against any non-settling party based on that party's joint and several liability for the total percentage of fault of all non-settling parties.

8.    Neither this Approval and Bar Order nor any term or provision of the Settlement Agreement shall be offered or received against any UNDERWRITER/PWR RELEASED PARTY or the Trustee as evidence of, or construed as or deemed to be evidence of, any presumption, concession or admission with respect to the truth of any fact alleged in or the validity of any Claim that was asserted or could have been asserted in this action.

9.    There is no just reason for delay in the entry of this Approval and Bar Order and immediate entry by the Clerk is expressly directed pursuant to Rule 54(b), Federal Rules of Civil Procedure.

10.    In accordance with Federal Rule of Civil Procedure 62, the Court authorizes Plaintiff to disburse the Settlement Payment described in Paragraph 2 of the Settlement Agreement to persons or entities eligible to receive that payment any time after ten business days have elapsed from the date the Court enters this Approval and Bar Order on the Court's docket.

11.    Jurisdiction is retained over the parties and the Settlement Agreement for all matters relating to the administration, interpretation, effectuation or enforcement of the Settlement Agreement and this Approval and Bar Order under the principles set forth in *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994).

Pm

**EXHIBIT B**

**BEUS GILBERT** PLLC
ATTORNEYS AT LAW
4800 NORTH SCOTTSDALE ROAD
SUITE 6000
SCOTTSDALE, ARIZONA 85251
TELEPHONE (480) 429-3000

Leo R. Beus/lbeus@beusgilbert.com/002687
Scot C. Stirling/sstirling@beusgilbert.com/005757
Timothy J. Paris/tparis@beusgilbert.com/006234

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gerald K. Smith, as Plan Trustee for and on behalf of the Estates of Boston Chicken, Inc., et al., <br><br> Plaintiff, <br><br> vs. <br><br> Arthur Andersen LLP, et al.,, <br><br> Defendants, | Case No.: CIV-01-218-PHX-PGR <br> CIV-01-246-PHX-EHC <br> CIV-02-1162-PHX-PGR <br> CIV-02-1248-PHX-PGR <br> (Consolidated) |
| Scott A. Beck, Saad J. Nadhir and Mark W. Stephens, <br><br> Third-Party Plaintiffs, <br><br> vs. <br><br> Bank of America Corporation, on behalf of itself and a class of other lenders of Boston Chicken, Inc. similarly situated, <br><br> Third-Party Defendants. | **JOINT MOTION OF TRUSTEE AND PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, MERRILL LYNCH & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, DEUTSCHE BANK SECURITIES INC. F/K/A DEUTSCHE BANK ALEX. BROWN, AND MORGAN STANLEY & CO. INCORPORATED TO APPROVE COMPROMISE AND SETTLEMENT AND TO ENTER PERMANENT BAR ORDER** |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

    A.   The Litigation ................................................................................................ 2

    B.   The Settlement Agreement ........................................................................... 4

    C.   The Bar Order ............................................................................................... 9

II.  LEGAL ARGUMENT ........................................................................................... 10

    A.   The Ninth Circuit Has Expressly Upheld This Court's
       Jurisdiction To Approve Settlements In This Action, And Has
       Upheld The Form Of Settlement That The Trustee And The
       Remaining Defendants Seek ........................................................................ 10

    B.   The Court Should Approve the Settlement Agreement .................................. 11

    C.   The Court Should Enter A Bar Order Barring All Claims Against
       The Remaining Defendants For Contribution, Indemnity Or Any
       Other Claim Related To The Released Claims. .............................................. 13

    D.   The Pro Rata Method For Crediting The Other Defendants
       Satisfies Any Claims Of The Other Defendants Against The
       Remaining Defendants. ................................................................................ 14

III. CONCLUSION ...................................................................................................... 16

i

Plaintiff Gerald K. Smith as Plan Trustee for and on behalf of the Estates of Boston Chicken, Inc., et al. (the "Plaintiff" or the "Trustee") and Defendants Paul, Weiss, Rifkind, Wharton & Garrison LLP ("PWR"), Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), Deutsche Bank Securities Inc. f/k/a Deutsche Bank Alex. Brown ("Alex. Brown") and Morgan Stanley & Co. Incorporated ("Morgan Stanley") (collectively the "Remaining Defendants") jointly move this Court to approve the Settlement Agreement with the Remaining Defendants and to enter an Approval and Bar Order prohibiting the assertion of certain Claims (as defined in the Settlement Agreement) against the Remaining Defendants. This Motion is based on the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   FACTUAL AND PROCEDURAL BACKGROUND

#### A.   The Litigation

1.   On October 5, 1998, BCI West, L.P., Boston Chicken, Inc., BC Real Estate Investments, Inc., and other Affiliates, filed their voluntary Chapter 11 petitions, in the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court").

2.   On or about May 3, 2000, the Debtors filed in the Bankruptcy Court their Third Amended Plan for BCI West L.P., et al, (the "Plan"), which Plan was confirmed by that Court on May 15, 2000.

3.   On or about May 25, 2000, Gerald K. Smith was appointed as the Plan Trustee ("Trustee").

4.     Under the terms of the Plan, Gerald K. Smith is the Trustee for the Debtors and their estates, with the rights, powers and duties as set forth in the Plan.  Among other things, the Trustee is charged with the post-confirmation administration and prosecution against third parties of Claims and causes of action that, prior to confirmation, constituted property of the Debtors' bankruptcy estates.  Under the terms of the Plan, the Trustee has all of the rights and powers of a bankruptcy trustee with regard to the assertion and enforcement of Claims of the Debtors.  The Trustee represents that he has the authority to enter into the Settlement Agreement with the Remaining Defendants.

5.     Included in the property of the Debtors' bankruptcy estates are certain Claims and causes of action that the Trustee has asserted against the Remaining Defendants, arising out of the Remaining Defendants' conduct as underwriters and as the Debtors' attorneys. Generally, the Trustee alleges that the Debtors sustained damages as the result of the Remaining Defendants' alleged breach of their duties as underwriters and as attorneys for Boston Chicken, Inc.

6.     To assist the Trustee in the prosecution of Claims against the Remaining Defendants, the Trustee employed the law firm of Beus Gilbert PLLC ("Beus Gilbert"), to investigate and prosecute, where warranted, potential Claims against the Remaining Defendants and others.  The Trustee submits that Beus Gilbert has substantial experience and expertise in the representation of fiduciaries in bankruptcy cases with claims against corporate directors, officers and others.

7.     PWR is represented by the law firm of Williams & Connolly, LLP, which PWR submits is a nationally recognized law firm with substantial experience in defending claims against law firms.

8.     The Underwriter Defendants are represented by the law firms of Gibson, Dunn & Crutcher LLP and Skadden, Arps, Slate, Meagher & Flom LLP, which the Underwriter Defendants submit are  nationally recognized law firms with substantial experience in defending claims against underwriters.

9.     The Remaining Defendants have denied that they have breached any duties to the Plaintiff or that their conduct in any way caused any damage to the Debtors.

10.     The Trustee, through Beus Gilbert, filed suit against the Remaining Defendants in that case now known as <u>Smith v. Arthur Andersen, L.L.P., et al.</u>, Case No. CIV-01-218-PHX-PGR,   CIV-01-246-PHX-EHC,   CIV-02-1162-PHX-PGR,   CIV-02-1248-PHX-PGR ("the Litigation").

**B.     The Settlement Agreement**

11.     In an effort to resolve their disputes before trial, the attorneys for the Parties engaged in extensive settlement discussions.

12.     The settlement discussions resulted in an agreement between the Trustee and the Remaining Defendants to settle all disputes between them by the payment by the Remaining Defendants to the Trustee of One Hundred Eighty Million Dollars ($180,000,000.00), the execution of mutual releases between the parties and affiliated entities and the full and complete resolution of all Claims against the Remaining Defendants

4

arising out of the Remaining Defendants' prior dealings with the Debtors and their respective bankruptcy estates.  <u>Exhibit A</u> is a true and correct copy of the Settlement Agreement that memorializes the settlement.  The Settlement Agreement expressly acknowledges that the Remaining Defendants deny any liability to the Debtors or to the Trustee and that the payment of money and performance of other obligations set forth in the Settlement Agreement shall not be construed as an admission of any allegation, fact, liability or any act of wrongdoing.

13.    The Claims of the Trustee against the Remaining Defendants are disputed as to liability, causation and damages.  Beus Gilbert has been employed by the Trustee to prosecute the Claims against the Remaining Defendants and others in the Litigation on a contingent fee basis.  Although counsel has prosecuted the Claims against the Remaining Defendants on a contingent basis, the Trustee remains responsible for costs and expenses of such litigation, which the Trustee believes would be substantial if the case proceeded to trial. Finally, the Trustee believes that litigation of Claims against the Remaining Defendants will be complex, protracted, and time-consuming.  In view of these considerations, and taking into account the inherent uncertainties of litigation, the Trustee believes that the receipt of $180 Million by the Trustee in full satisfaction of Claims against the Remaining Defendants is a fair and reasonable compromise and that the proposed Settlement Agreement with the Remaining Defendants is in the best interests of the Debtors, their estates and creditors.

14.    Based on the foregoing, the Trustee requests that the Court approve the Settlement Agreement.  The Trustee proposes to retain or distribute the Trustee's proceeds

from the settlement of his Claims against the Remaining Defendants in accordance with the Plan.

15.    The Settlement Agreement contemplates that the Remaining Defendants' payment of $180 Million will provide the Remaining Defendants with comprehensive, full and complete finality with regard to any and all Claims that could be asserted against the Remaining Defendants as a result of their prior dealings with the Debtors or their respective bankruptcy estates or with any of the Other Defendants (as defined in the Settlement Agreement) in the Litigation.

16.    The Trustee has asserted Claims against various persons and entities in this action.  The Other Defendants may attempt to assert, or may claim to have, Claims against the Remaining Defendants that arise from or relate to the Remaining Defendants' conduct or prior dealings with the Debtors or their respective bankruptcy estates, including but not limited to Claims that would: (i) be based in whole or in part upon any allegation made by the Trustee against the Remaining Defendants in the Litigation including, but not limited to, Claims based on breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, fraudulent transfer or conveyance, fraudulent concealment, collusive tort, conspiracy, professional malpractice/negligence, negligent misrepresentation, misrepresentation, breach of express or implied contract, any form of damages, any form of relief sounding in deepening insolvency, restitution, preferential transfer, and aiding and abetting or any other form of civil violation of Colorado Revised Statutes § 18-17-104(3) and related statutory provisions by some or all of the Remaining Defendants with respect to their conduct

6

regarding the Debtors or their respective bankruptcy estates; (ii) be based in whole or in part on any allegation that any of the Other Defendants (as defined in the Settlement Agreement), including without limitation any of the defendants or third-party defendants in the Litigation, have a right to contribution or indemnity from the Remaining Defendants, whether at law, in equity, by agreement or otherwise, respecting any loss or damages allegedly suffered or incurred by such person or entity arising from or relating to any of the Remaining Defendants' conduct or prior dealings with the Debtors or their respective bankruptcy estates or with any of the Other Defendants or defendants or third-party defendants in the Litigation; (iii) constitute property of the Debtors' respective bankruptcy estates (within the meaning of 11 U.S.C. § 541); or (iv) give rise to a right of the Remaining Defendants to seek contribution or indemnity from any one or more of the Debtors or their respective bankruptcy estates, whether at law, in equity, by agreement or otherwise. The entities or persons against whom the Trustee has asserted Claims and which may have, or may claim to have, such Claims against the Remaining Defendants include, without limitation, the "Other Defendants" as defined by the Settlement Agreement:

    A.     PricewaterhouseCoopers, LLP;

    B.     Scott A. Beck (and marital community and spouse);

    C.     Saad J. Nadhir (and marital community and spouse);

    D.     Bell, Boyd & Lloyd, LLC;

    E.     Arthur Andersen LLP;

    F.     Mark A. Stephens (and marital community and spouse);

G.   Pedersen & Houpt;

H.   Peer Pedersen (and marital community and spouse);

I.   Bank of America Corporation;

J.   Bank of America NT&SA;

K.   BA Securities, Inc.;

L.   General Electric Capital Corporation; and

M.   GE Capital Markets Group, Inc.

17.   In order to obtain the highest possible value from the potential Claims against the Remaining Defendants, through settlement or otherwise, the Trustee must be able to control fully any and all Claims that the Trustee has regarding property of the estates of the Debtors under 11 U.S.C. § 541. In order to achieve a full, final and complete settlement with the Remaining Defendants, which includes the release by the Remaining Defendants of any Claims against the Debtors' estates, the Trustee must be able to eliminate any potential Claims of the Remaining Defendants against the Debtors' estates arising out of Claims by the Other Defendants against the Remaining Defendants on account of which the Remaining Defendants might otherwise have a claim against the Debtors' estates. Critical to the Remaining Defendants' decision to settle with the Trustee and pay $180 Million for the benefit of the Debtors' estates and to release their Claims against the estates, is the assurance, in the form of an Approval and Bar Order of this Court, that the Remaining Defendants are settling all Claims against them arising from or relating to their prior conduct and dealing with the Debtors or their respective bankruptcy estates, and that the Remaining

8

Defendants will not have any liability to any of the Other Defendants as a result of such prior dealings.

### C.     The Approval and Bar Order

18.     The Trustee requests that the Court enter an Approval and Bar Order in the form attached as Exhibit A that permanently bars any Other Defendants from asserting or continuing to prosecute any Claim against the Remaining Defendants as a result of their prior conduct or dealings with the Debtors or their respective estates.

19.     The Approval and Bar Order also provides that with respect to any judgment that might be entered on any cause of action or Claim in the Litigation, or any pending or future adversary proceeding, contested matter or civil action in which the Trustee is also a party, in which there is or may be a determination of fault on the part of the Remaining Defendants including, but not limited to, a determination of fault based on joint and several liability, the Other Defendants shall receive a pro rata judgment reduction credit.   Any resulting judgment credit shall be applied so as to preclude recovery by any party for any amount of pro rata fault attributable to the Remaining Defendants.   Thus, the Other Defendants cannot be held responsible for any portion of the fault that may be found to be attributable to the Remaining Defendants.

20.     None of the Other Defendants has asserted any claim against the Remaining Defendants as a result of the Claims made against the Remaining Defendants in the Litigation by the Trustee.  If, and to the extent that, any of the Other Defendants would have any valid Claim against the Remaining Defendants that a bar order would preclude, which

the Trustee and the Remaining Defendants deny, such claim would of necessity arise out of the same facts as those that form the basis for the Claims of the Trustee.  Any Claims that the Bar Order would preclude are, therefore, wholly interrelated with the Claims of the Trustee.

21.     Litigation of the Trustee's Claims against the Remaining Defendants would be complex and protracted.  Entry of the Bar Order as requested will facilitate the resolution of the disputes with the Remaining Defendants and promote the public policy in favor of the settlement of litigation.

22.     Based on the foregoing, the settlement with the Remaining Defendants is fair and reasonable and it is fair and equitable to enter a permanent Bar Order as requested.

23.     Notice of this Motion has been served on all parties in the Litigation, including the Other Defendants, in each case through their counsel of record, where known.

24.     The Trustee and the Remaining Defendants respectfully move that this Court enter an Approval and Bar Order in the form attached as <u>Exhibit B</u> approving the settlement with the Remaining Defendants on the terms and conditions set forth in the Settlement Agreement attached as <u>Exhibit A</u> and permanently barring the Other Defendants from asserting any Claim against the Remaining Defendants as set forth in the attached Bar Order.

## II.    <u>LEGAL ARGUMENT</u>

### A.    <u>The Ninth Circuit Has Expressly Upheld This Court's Jurisdiction To Approve Settlements In This Action, And Has Upheld The Form Of Settlement That The Trustee And The Remaining Defendants Seek.</u>

Previously in this litigation, the Underwriter Defendants, Saad Nadhir, Scott Beck and Peer Pedersen appealed this Court's Approval and Bar Order of the Trustee's settlement with

Bell, Boyd & Lloyd, and (except for Pedersen) Pedersen & Houpt.   As non-settling defendants, the Appellants had argued:  (1)  that this Court lacked jurisdiction to approve a settlement because, according to Appellants, the Trustee lacks standing to bring claims; and (2)  that the Securities Litigation Uniform Standards Act ("SLUSA") barred the Trustee's lawsuit.  Recently, the Ninth Circuit affirmed this Court's Orders, approving the Trustee's settlements with Bell, Boyd & Lloyd and Pedersen & Houpt, thereby rejecting the non-settling Defendants' objections. 421 F.3d 989 (9th Cir. 2005).

As demonstrated in the Ninth Circuit's opinion, this Court has jurisdiction to approve settlements between the Trustee and Defendants.

## B.   <u>The Court Should Approve the Settlement Agreement</u>

Public policy favors the pretrial settlement of complex litigation.  *In re Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).   The approval of a proposed compromise negotiated by a trustee "is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interest of the estate nor fair and equitable for the creditors."  *In re MGS Marketing*, 111 B.R. 264, 266-67 (9th Cir. BAP 1990).

When approving compromise agreements, the Court has great latitude and generally considers the following: 1) probability of success in the litigation; 2) the difficulties, if any, to be encountered in the matter of collection; 3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending; and 4) the paramount interest of

the creditors and a proper deference to their reasonable views in the premises. *In re Woodson*, 830 F.2d 610, 620 (9th Cir. 1988).

The probability of success in any litigation is uncertain. In this case, the Remaining Defendants continue to dispute the claims asserted by the Trustee. On the other hand, the Trustee asserts losses as evidenced by the claims made in the Litigation. The Remaining Defendants have, however, raised a number of defenses that could defeat the claims.

Additionally, this litigation is complex and involves multiple parties and multiple claims that arise from conduct occurring in multiple jurisdictions. Absent this Settlement Agreement, the cost to prosecute the claims against the Remaining Defendants would well exceed several millions of dollars. Additionally, such litigation will significantly impact judicial resources and place a great burden on the Remaining Defendants. Of course, the litigation process could last for another two or three years, including any appeal.

By settling his claims against the Remaining Defendants, the Trustee will receive a portion of the $180 Million on behalf of the Debtors' estates which can be used to compensate the creditors. The Trustee recognizes that there are risks associated with this litigation and that the Settlement Agreement is reasonable and appropriate in light of the adverse factors.

Given an assessment of the probability of success, the complexity of the litigation, and the sophistication of the parties, the Court should approve the Settlement Agreement as reasonable and appropriate under the circumstances.

12

**C.** **The Court Should Enter A Bar Order Barring All Claims Against The Remaining Defendants For Contribution, Indemnity Or Any Other Claim Related To The Released Claims.**

As this Court is aware, the Settlement Agreement only settles the Trustee's claims as to the Remaining Defendants. As a result, in the absence of a Bar Order, the Remaining Defendants could later be faced with claims for indemnity, contribution, or the like by the Other Defendants. As the Ninth Circuit has recognized:

> obtaining a settlement in multi-party litigation may be quite complex. The facts specified in the pleadings may give rise to cross claims or counterclaims based on contribution or indemnity. In such cases, settling defendants cannot obtain finality unless a "bar order" is entered by the court. In essence, a bar order constitutes a final discharge of all obligations of the settling defendants and bars any further litigation of claims made by non-settling defendants against settling defendants.

*Franklin v. Kaypro*, 884 F.2d 1222, (9th Cir. 1989) (emphasis added).

Without a bar order in place, the Remaining Defendants cannot eliminate their financial exposure through this settlement. Although the Settlement Agreement may well serve to limit the Remaining Defendants' exposure with respect to claims made by the Trustee, the Remaining Defendants have no assurance that the Other Defendants will not later seek to hold the Remaining Defendants financially responsible by way of contribution, indemnity or the like.

Federal courts are permitted to enter a bar order that constitutes "a final discharge of all obligations of the settling defendants and bars any further litigation of claims made by non-settling defendants" to overcome the obstacle otherwise created by contribution or indemnity claims. *Kaypro*, 884 F.2d at 1225. As a result, a bar order may preclude all

claims by a non-settling defendant against a settling defendant however those claims are denominated.   *See e.g., In re Consolidated Pinnacle West Securities Litigation/R.T.C. Merabank Litigation*, 51 F.3d 194 (9th Cir. 1995) ("[W]e concur with the district court and a number of federal courts that have rejected the proposition that settlement bars are effective against contribution claims but not claims for indemnity.").

This Court's authority to enter a bar order derives from several sources.  For example, the Advisory Committee Notes to Federal Rule of Civil Procedure 16 provide "[s]ince it obviously eases crowded court dockets and results in savings to the litigants and the judicial system, settlement should be facilitated at as early a state of the litigation as possible."  Fed. R. Civ. P. 16(c) Advisory Committee Notes.  Additionally, federal common law supports the Court's authority to enter permanent bar orders.  *See Kaypro*, 884 F.2d at 1228 ("We agree, therefore, with those courts that have called for the creation of federal common law to govern this issue.").

**D.   <u>The Pro Rata Method For Crediting The Other Defendants Satisfies Any Claims Of The Other Defendants Against The Remaining Defendants.</u>**

As a general matter, when a settlement with less than all of the defendants is achieved, the non-settling defendants are credited to compensate them for the loss of their contribution, indemnity and similar claims.  In this case, by entering a claims bar order, this Court can protect the rights of the Other Defendants, if any, by reducing the Trustee's potential recovery against the Other Defendants in proportion to the percentage of fault, if any, allocated to the Remaining Defendants at trial.

14

The Trustee and the Remaining Defendants request that this Court employ the "proportionate" or "pro rata" method for judgment reduction credit with respect to the Other Defendants. As a result, the potential claims against the Remaining Defendants by the Other Defendants will be fully satisfied, thus eliminating the need to preserve contribution or indemnity claims. *See* Colo. Rev. Stat. § 13-50.5-105. The pro rata judgment reduction credit ensures the Other Defendants will "never pay more than they would if all parties had gone to trial." *Kaypro*, 884 F.2d at 1231. By protecting the Other Defendants with the pro rata judgment credit, the Court can eliminate the need for an extensive fairness hearing that is typically required if the Court adopts the pro tanto method of judgment reduction. *In re Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996). Under the pro tanto method, which is generally disfavored, the judgment against the Other Defendants would be reduced by the dollar amount of the settlement paid by the Remaining Defendants.

The Trustee's Settlement Agreement with the Remaining Defendants will not place an unfair burden on the Other Defendants, all of whom have settled with the Trustee. Moreover, according to the Settlement Agreement, any resulting judgment reduction credit shall be applied so as to preclude recovery by any party for any amount of pro rata fault attributable to the Remaining Defendants.

In this case, the Trustee's ability to collect a settlement payment from the Remaining Defendants depends upon the entry of the requested bar order. The requested bar order is a requirement of the Settlement Agreement that provides both financial protection to the

Remaining Defendants and protection to the Other Defendants by way of a pro rata set-off. Accordingly, the requested bar order should be entered.

## III.   <u>CONCLUSION</u>

The Trustee and the Remaining Defendants request that this Court enter an Approval and Bar Order: (1) authorizing and approving the settlement and compromise with the Remaining Defendants and the attached Settlement Agreement and (2) permanently barring the Other Defendants from asserting or prosecuting in the future any Claim against the Remaining Defendants consistent with the attached Approval and Bar Order.

DATED this _____ day of January, 2006.

**BEUS GILBERT PLLC**


By  *s/ Leo R. Beus*
     Leo R. Beus
     Scot C. Stirling
     Timothy J. Paris
     Suite 6000
     4800 North Scottsdale Road
     Scottsdale, AZ  85251
     *Attorneys for Plaintiff*

**GIBSON, DUNN & CRUTCHER LLP**

By___ s/ *George B. Curtis*_____
      George B. Curtis
      1801 California St., Suite 4200
      Denver, CO  80202
      (303) 298-5700

Thomas J. Nolan
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California  90071
Phone:  213-687-5000

Martin R. Galbut (# 002943)
GALBUT & HUNTER
2425 East Camelback Road, Suite 1020
Phoenix, Arizona  85016
Phone:  602-955-1455

*Attorneys for Defendants Merrill Lynch & Co.,
Inc., Merrill Lynch, Pierce, Fenner & Smith
Incorporated, Deutsche Bank Securities Inc. f/k/a
Deutsche Bank Alex. Brown, and Morgan Stanley
& Co. Incorporated*

**WILLIAMS & CONNOLLY LLP**

By___ s/ *John J. Buckley, Jr.*_____
      John J. Buckley, Jr.
      725 Twelfth St., N.W.
      Washington, D.C. 20005
      (202) 434-5000

*Attorneys for Paul, Weiss, Rifkind, Wharton
   & Garrison LLP*

17

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2006, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Susan T. Mathew, Esq.
**MATHEW & MATHEW, P.C.**
satmathew@mathewlaw.com

Joseph C. Smith, Jr., Esq.
Allison G. Wheeler, Esq.
James B. Heaton, III, Esq.
**BARTLIT BECK HERMAN**
 **PARLENCHAR & SCOTT LLP**
joseph.smith@bartlit-beck.com
alison.wheeler@bartlit-beck.com
jbheaton@barttlit-beck.com

**Attorneys for Arthur Andersen LLP**


Don Bivens, Esq.
Paul L. Stoller, Esq.
**BIVENS & NORE, P.A.**
dwbivens@bivens-nore.com
plstoller@bivens-nore.com

**Attorneys for Saad J. Nadhir**


Scott B. Cohen, Esq.
**SACKS TIERNEY PA**
scott.cohen@sackstierney.com

John Hartmann, Esq.
Jonathan E. Hinkemeyer, Esq.
Scott F. Hessell, Esq.
**KIRKLAND & ELLIS LLP**
**jhartmann@kirkland.com**
jhinkemeyer@kirkland.com
shessell@kirkland.com

**Attorneys for PricewaterhouseCoopers LLP**

I hereby certify that on January 13, 2006, I have served the attached document by e-mail on the following, who are not registered participants of the CM/ECF System:

Robert E. Shapiro, Esq.
**BARACK, FERRAZZANO, KIRSCHBAUM,**
   **PEARLMAN & NAGELBERG LLC**
Rob.Shapiro@bfkpn.com

**Attorney for Bank of America, Bank of America NT&SA, and BA Securities, Inc.**

Rolf S. Woolner, Esq.
**WINSTON & STRAWN**
rwoolner@winston.com

**Attorney for GE Capital Corp. and GE Capital Markets Group**

I further hereby certify that on January 13, 2006, I have caused a copy of the attached document to be served by hand on each of the following:

Don Bivens
Paul L. Stoller
BIVENS & NORE, P.A.
3003 North Central Avenue, Suite 1200
Phoenix, AZ 85012

**Attorney for Saad J. Nadhir**

Stephen C. Rich, Esq.
HEBERT SCHENK P.C.
1440 E. Missouri Avenue
Missouri Commons Suite 125
Phoenix, AZ  85014

**Attorney for Scott Beck**


Martin Glenn, Esq.
O'Melveny & Myers LLP
153 East 53rd Street
New York, New York  10022-4611

**Attorney for Mark W. Stephens**


Susan T. Mathew, Esq.
MATHEW & MATHEW, P.C.
1850 N. Central Avenue, Suite 1910
Phoenix, AZ 85004

**Attorney for Arthur Andersen LLP**


Scott B. Cohen, Esq.
SACKS TIERNEY P.A.
4250 North Drinkwater Blvd., 4th Floor
Scottsdale, AZ  85251-3647

**Attorney for PricewaterhouseCoopers LLP**


John J. Bouma, Esq.
James R. Condo, Esq.
Patricia Lee Refo, Esq.
SNELL & WILMER
One Arizona Center
400 East Van Buren
Phoenix, Arizona  85004-2202

**Attorneys for Bell, Boyd & Lloyd**

Michael K. Kennedy, Esq.
Marc Gallagher, Esq.
Trevor Chait, Esq.
GALLAGHER & KENNEDY, PA
2575 East Camelback Road
Phoenix, AZ 85016

**Attorneys for Peer Pedersen and Pedersen & Houpt**


C. Barry Montgomery, Esq.
David E. Stevenson, Esq.
Williams, Montgomery & John, LTD.
20 North Wacker Drive, Suite 2100
Chicago, IL 60606-3094

**Attorneys for Peer Pedersen**

Robert J. Pohlman, Esq.
RYLEY CARLOCK & APPELWHITE PA
One North Central, Suite 1200
Phoenix, AZ  85004-4417

**Attorney for Bank of America, Bank of America NT&SA, and BA Securities, Inc.**


Scott Freeman, Esq.
SQUIRE SANDERS & DEMPSEY
40 North Central Avenue, Suite 2700
Phoenix, AZ  85004-4498

**Attorney for GE Capital Corp. and GE Capital Markets Group**


 _s/Scot C. Stirling_

PM

# Exhibit C to Settlement Agreement

List of underwriters involved in each Boston Chicken public offering:

**A.**     **November 8, 1993 initial public offering**

1.    Merrill Lynch, Pierce, Fenner & Smith Incorporated
2.    Alex. Brown & Sons, Incorporated
3.    Bear, Stearns & Co. Inc.
4.    CS First Boston Corporation
5.    Donaldson, Lufkin & Jenrette Securities Corporation
6.    A.G. Edwards & Sons, Inc.
7.    Goldman, Sachs & Co.
8.    Lehman Brothers Inc.
9.    Montgomery Securities
10.   PaineWebber Incorporated
11.   Prudential Securities Incorporated
12.   Salomon Brothers Inc.
13.   Smith Barney Shearson Inc.
14.   Wertheim Schroder & Co. Incorporated
15.   Dean Witter Reynolds Inc.
16.   Advest, Inc.
17.   William Blair & Company
18.   J.C. Bradford & Co.
19.   Dain Bosworth Incorporated
20.   Fahnestock & Co. Inc.
21.   First Albany Corporation
22.   First of Michigan Corporation
23.   Janney Montgomery Scott Inc.
24.   Kemper Securities, Inc.
25.   C.J. Lawrence/Deutsche Bank Securities Corporation
26.   Legg Mason Wood Walker, Incorporated
27.   McDonald & Company Securities, Inc.
28.   Morgan Keegan & Company, Inc.
29.   Piper Jaffray Inc.
30.   The Principal/Eppler, Guerin & Turner, Inc.
31.   Raymond James & Associates, Inc.
32.   The Robinson-Humphrey Company, Inc.
33.   Tucker Anthony Incorporated
34.   Wessels, Arnold & Henderson
35.   Wheat, First Securities, Inc.
36.   The Chicago Corporation
37.   Crowell, Weedon & Co.
38.   Hamilton Investments, Inc.
39.   Hunter Associates
40.   Mesirow Financial, Inc.

41.     The Ohio Company
42.     Parker/Hunter Incorporated
43.     Pennsylvania Merchant Group Ltd.
44.     Roney & Co.
45.     Scott & Stringfellow, Inc.
46.     The Seidler Companies Incorporated
47.     Utendahl Capital Partners, L.P.

**B.     January 25, 1994  4-1/2% Convertible Subordinated Debentures offering**

1.     Merrill Lynch, Pierce, Fenner & Smith Incorporated
2.     Alex. Brown & Sons Incorporated

**C.     August 10, 1994 common stock offering**

1.     Merrill Lynch, Pierce, Fenner & Smith Incorporated
2.     Alex. Brown & Sons Incorporated
3.     Bear, Stearns & Co. Inc.
4.     CS First Boston Corporation
5.     Dean Witter Reynolds Inc.
6.     Donaldson, Lufkin & Jenrette Securities Corporation
7.     A.G. Edwards & Sons, Inc.
8.     Goldman, Sachs & Co.
9.     Kidder, Peabody & Co. Incorporated
10.    Lehman Brothers Inc.
11.    Montgomery Securities
12.    PaineWebber Incorporated
13.    Piper Jaffray Inc.
14.    Prudential Securities Incorporated
15.    Salomon Brothers Inc.
16.    Smith Barney Inc.
17.    Crowell, Weedon & Co.
18.    Dain Bosworth Incorporated
19.    Fahnestock & Co. Inc.
20.    Hanifen, Imhoff Inc.
21.    Janney Montgomery Scott Inc.
22.    Kemper Securities, Inc.
23.    C.J. Lawrence/Deutsche Bank Securities Corporation
24.    Legg Mason Wood Walker, Incorporated
25.    Mesirow Financial, Inc.
26.    The Ohio Company
27.    Principal Financial Securities, Inc.
28.    Rauscher Pierce Refsnes, Inc.
29.    The Robinson-Humphrey Company, Inc.
30.    Roney & Co.
31.    The Seidler Companies Incorporated
32.    Utendahl Capital Partners, L.P.

33.    Wessels, Arnold & Henderson
34.    Wheat, First Securities, Inc.

**D.    May 24, 1995 LYONs offering**

1.    Merrill Lynch, Pierce, Fenner & Smith Incorporated

**E.    December 5, 1995 common stock offering**

1.    Merrill Lynch, Pierce, Fenner & Smith Incorporated
2.    Alex. Brown & Sons Incorporated
3.    Dean Witter Reynolds Inc.
4.    A.G. Edwards & Sons, Inc.
5.    Goldman, Sachs & Co.
6.    Montgomery Securities
7.    Morgan Stanley & Co. Incorporated
8.    Oppenheimer & Co., Inc.
9.    Piper Jaffray Inc.
10.    Prudential Securities Incorporated
11.    Schroder Wertheim & Co. Incorporated
12.    Smith Barney Inc.
13.    Nesbitt Burns Securities Inc.
14.    Arnold and S. Bleichroeder, Inc.
15.    J.C. Bradford & Co.
16.    Equitable Securities Corporation
17.    EVEREN Securities, Inc.
18.    Hanifen, Imhoff Inc.
19.    Interstate/Johnson Lane Corporation
20.    Janney Montgomery Scott Inc.
21.    Edward D. Jones & Co.
22.    Ladenburg, Thalmann & Co., Inc.
23.    Legg Mason Wood Walker, Incorporated
24.    Principal Financial Securities, Inc.
25.    Pryor, McClendon, Counts & Co., Inc.
26.    Rauscher Pierce Refsnes, Inc.
27.    Wessels, Arnold & Henderson
28.    Wheat, First Securities, Inc.

**F.    April 22, 1997 7-3/4% Convertible Subordinated Debentures offering**

1.    Merrill Lynch, Pierce, Fenner & Smith Incorporated
2.    Alex. Brown & Sons Incorporated
3.    Morgan Stanley & Co. Incorporated

3

$\rho^m$

1

**EXHIBIT D**

2

3

4    IN THE UNITED STATES DISTRICT COURT

5    FOR THE DISTRICT OF ARIZONA

6

| | |
|---|---|
| 7  GERALD K. SMITH, as Plan Trustee for | CV-01-218-PHX-PGR |
| and on behalf of the Estates of Boston | CV-01-246-PHX-EHC |
| 8  Chicken, Inc., et al. | CV-02-1162-PHX-PGR |
| | CV-02-1248-PHX-PGR |
| 9  Plaintiff, | (Consolidated) |
| 10 | |
| v. | **STIPULATED MOTION TO DISMISS** |
| 11 | **WITH PREJUDICE PLAINTIFF'S** |
| | **CLAIMS AGAINST DEFENDANTS** |
| ARTHUR ANDERSEN LLP, a limited | **MERRILL LYNCH & CO., INC.,** |
| 12 liability partnership, et al. | **MERRILL LYNCH, PIERCE, FENNER &** |
| | **SMITH INCORPORATED, DEUTSCHE** |
| 13 Defendants. | **BANK SECURITIES INC. f/k/a** |
| 14 | **DEUTSCHE BANK ALEX. BROWN and** |
| | **MORGAN STANLEY & CO.** |
| 15 | **INCORPORATED** |
| 16 Scott A. Beck, et al., | |
| 17 Third-Party Plaintiffs, | |
| 18 | |
| vs. | |
| 19 | |
| Bank of America Corporation, | |
| 20 | |
| Third-Party Defendants. | |
| 21 | |

22

23

24    Plaintiff Gerald K. Smith, as Plan Trustee for and on behalf of the Estates of Boston

25    Chicken, Inc., BC Real Estate Investments, Inc. and all Boston Chicken Affiliates, and Defendants

26    Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Deutsche Bank

27    Securities Inc. f/k/a Deutsche Bank Alex. Brown ("Alex. Brown"), and Morgan Stanley & Co.

28    Incorporated, through their respective counsel, stipulate to dismissal of all claims against Merrill

Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Alex. Brown, and Morgan Stanley & Co. Incorporated, with prejudice, each of the parties to bear its own fees and costs incurred in this matter.

Pursuant to Rule 41 of the Federal Rules of Civil Procedure, the parties respectfully request that the Court enter an Order of Dismissal With Prejudice dismissing Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Alex. Brown, and Morgan Stanley & Co. Incorporated, from this case with prejudice. For the Court's convenience, a proposed Order is attached hereto. The parties further stipulate that such dismissal is intended to have no effect upon the claims asserted by Plaintiff against the other Defendants herein.

The parties stipulate that the Court shall retain jurisdiction to enforce the terms of the Settlement Agreement under the principles set forth in *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994).

DATED this _____ day of _____, 2006.

**BEUS GILBERT PLLC**

By   *s/ Leo R. Beus*
     Leo R. Beus
     Scot C. Stirling
     Timothy J. Paris
     Suite 6000
     4800 North Scottsdale Road
     Scottsdale, AZ  85251
     (480) 429-3000

     *Attorneys for Plaintiff*

**GIBSON, DUNN & CRUTCHER LLP**


By___*s/ George B. Curtis*_____
      George B. Curtis
      1801 California St., Suite 4200
      Denver, CO  80202
      (303) 298-5700

Thomas J. Nolan
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California  90071
Phone:  213-687-5000

Martin R. Galbut (# 002943)
GALBUT & HUNTER
2425 East Camelback Road, Suite 1020
Phoenix, Arizona  85016
Phone:  602-955-1455

*Attorneys for Defendants Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Deutsche Bank Securities Inc. f/k/a Deutsche Bank Alex. Brown, and Morgan Stanley & Co. Incorporated*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GERALD K. SMITH, as Plan Trustee for and on behalf of the Estates of Boston Chicken, Inc., et al.<br><br>            Plaintiff,<br><br>v.<br><br>ARTHUR ANDERSEN LLP, a limited liability partnership, et al.<br><br>            Defendants.<br><hr>Scott A. Beck, et al.,<br><br>       Third-Party Plaintiffs,<br><br>vs.<br><br>Bank of America Corporation,<br><br>       Third-Party Defendants. | **CV-01-218-PHX-PGR**<br>**CV-01-246-PHX-EHC**<br>**CV-02-1162-PHX-PGR**<br>**CV-02-1248-PHX-PGR**<br>**(Consolidated)**<br><br>**ORDER FOR DISMISSAL OF DEFENDANTS MERRILL LYNCH & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, DEUTSCHE BANK SECURITIES INC. f/k/a DEUTSCHE BANK ALEX. BROWN and MORGAN STANLEY & CO. INCORPORATED** |

Upon the presentation of the Stipulation for Dismissal of the action by Plaintiff Gerald K. Smith, as Plan Trustee for and on behalf of the Estates of Boston Chicken, Inc., et al. ("Plaintiff") and against Merrill Lynch & Co., Inc. and its subsidiary Merrill Lynch, Pierce, Fenner & Smith Incorporated, Deutsche Bank Securities Inc. f/k/a Deutsche Bank Alex. Brown ("Alex. Brown"), and Morgan Stanley & Co. Incorporated, and good cause appearing therefor,

1    IT IS HEREBY ORDERED that this action shall be and is dismissed with prejudice
2   against Defendants Merrill Lynch & Co., Inc. and its subsidiary Merrill Lynch, Pierce, Fenner &
3   Smith Incorporated, Alex. Brown, and Morgan Stanley & Co. Incorporated only.  Each party shall
4   bear his or its own costs and attorneys' fees.

5    IT IS FURTHER ORDERED that under the principles set forth in *Kokkonen v.*
6   *Guardian Life Insurance Co.*, 511 U.S. 375 (1994), this Court shall retain jurisdiction only
7   for the limited purposes of enforcing the Settlement Agreement made between Plaintiff and
8   Defendants Merrill Lynch & Co., Inc. and its subsidiary Merrill Lynch, Pierce, Fenner & Smith
9   Incorporated, Alex. Brown, and Morgan Stanley & Co. Incorporated and, if necessary, enforcing
10  the terms of the Approval and Bar Order agreed to between Plaintiff and Defendants Merrill
11  Lynch & Co., Inc. and its subsidiary Merrill Lynch, Pierce, Fenner & Smith Incorporated, Alex.
12  Brown, and Morgan Stanley & Co. Incorporated and entered by this Court on the _____ day of
13  _____, 2006.

pm

**EXHIBIT E**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GERALD K. SMITH, as Plan Trustee for and on behalf of the Estates of Boston Chicken, Inc., et al.<br><br>    Plaintiff,<br><br>v.<br><br>ARTHUR ANDERSEN LLP, a limited liability partnership, et al.<br><br>    Defendants. | CV-01-218-PHX-PGR<br>CV-01-246-PHX-EHC<br>CV-02-1162-PHX-PGR<br>CV-02-1248-PHX-PGR<br>(Consolidated)<br><br>**STIPULATED MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S CLAIMS AGAINST DEFENDANT PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |
| Scott A. Beck, et al.,<br><br>    Third-Party Plaintiffs,<br><br>vs.<br><br>Bank of America Corporation,<br><br>    Third-Party Defendants. | |

        Plaintiff Gerald K. Smith, as Plan Trustee for and on behalf of the Estates of Boston Chicken, Inc., BC Real Estate Investments, Inc. and all Boston Chicken Affiliates, and Defendant Paul, Weiss, Rifkind, Wharton & Garrison LLP, through their respective counsel, stipulate to dismissal of all claims against Paul, Weiss, Rifkind, Wharton & Garrison LLP, with prejudice, each of the parties to bear its own fees and costs incurred in this matter.

1   Pursuant to Rule 41 of the Federal Rules of Civil Procedure, the parties
2   respectfully request that the Court enter an Order of Dismissal With Prejudice dismissing
3   Paul, Weiss, Rifkind, Wharton & Garrison LLP from this case with prejudice.  For the
4   Court's convenience, a proposed Order is attached hereto.  The parties further stipulate that
5   such dismissal is intended to have no effect upon the claims asserted by Plaintiff against the
6   other Defendants herein.

7   The parties stipulate that the Court shall retain jurisdiction to enforce the terms
8   of the Settlement Agreement under the principles set forth in *Kokkonen v. Guardian Life*
9   *Insurance Co.*, 511 U.S. 375 (1994).

11   DATED this _____ day of _____, 2006.

13   **BEUS GILBERT PLLC**

15   By  *s/ Leo. R. Beus*_____
         Leo R. Beus
16       Scot C. Stirling
         Timothy J. Paris
17       Suite 6000
         4800 North Scottsdale Road
18       Scottsdale, AZ  85251
         (480) 429-3000
19

20   *Attorneys for Plaintiff*

21   **WILLIAMS & CONNOLLY LLP**

23   By  *s/ John J. Buckley, Jr.*_____
         John J. Buckley, Jr.
24       725 Twelfth St., N.W.
         Washington, D.C. 20005
25       (202) 434-5000

27   *Attorney for Defendant Paul, Weiss, Rifkind,*
          *Wharton & Garrison LLP*

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GERALD K. SMITH, as Plan Trustee for and on behalf of the Estates of Boston Chicken, Inc., et al. | CV-01-218-PHX-PGR<br>CV-01-246-PHX-EHC<br>CV-02-1162-PHX-PGR<br>CV-02-1248-PHX-PGR<br>(Consolidated) |
|         Plaintiff, | |
| v. | **ORDER FOR DISMISSAL OF PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP WITH PREJUDICE** |
| ARTHUR ANDERSEN LLP, a limited liability partnership, et al. | |
|         Defendants. | |

Scott A. Beck, et al.,

        Third-Party Plaintiffs,

vs.

Bank of America Corporation,

        Third-Party Defendants.

        Upon the presentation of the Stipulation for Dismissal of the action by Plaintiff Gerald K. Smith, as Plan Trustee for and on behalf of the Estates of Boston Chicken, Inc., et al. ("Plaintiff"), and against Defendant Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss"), and good cause appearing therefor,

        IT IS HEREBY ORDERED that this action shall be and is dismissed with prejudice against Paul Weiss only. Each party shall bear his or its own costs.

        IT IS FURTHER ORDERED that under the principles set forth in *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994), this Court shall retain jurisdiction only for the limited purposes of enforcing the Settlement Agreement made between Plaintiff and

Paul Weiss and, if necessary, enforcing the terms of the Approval and Bar Order agreed to between Plaintiff and Paul Weiss and entered by this Court on the _____ day of _____, 2006.

.

# EXHIBIT B

*PM*

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GERALD K. SMITH, as Plan Trustee for and on behalf of the Estates of Boston Chicken, Inc., et al. | CV-01-218-PHX-PGR<br>CV-01-246-PHX-EHC<br>CV-02-1162-PHX-PGR<br>CV-02-1248-PHX-PGR |
| Plaintiff, | (Consolidated) |
| v. | |
| ARTHUR ANDERSEN LLP, a limited liability partnership, et al. | **APPROVAL AND BAR ORDER** |
| Defendants. | |
| Scott A. Beck, et al., | |
| Third-Party Plaintiffs, | |
| vs. | |
| Bank of America Corporation, | |
| Third-Party Defendants. | |

On January 13, 2006, Plaintiff and Defendants Merrill Lynch & Co., Inc. and its subsidiary Merrill Lynch, Pierce, Fenner & Smith Inc., Deutsche Bank Securities, Inc. f/k/a Deutsche Bank Alex. Brown ("Alex. Brown"), Morgan Stanley & Co. Incorporated (these four Defendants are collectively referred to in this Order as the "Underwriters"), and Paul, Weiss, Rifkind, Wharton & Garrison LLP ("PWR"), filed in this Court a Joint Motion to Approve Compromise and Settlement and to Enter Permanent Bar Order with respect to the

Gibson, Dunn & Crutcher LLP

1

Settlement Agreement signed by Plaintiff, the Underwriters and PWR as of January 12, 2006 ("Settlement Agreement"). Pursuant to the Joint Motion, Plaintiff, the Underwriters, and PWR sought a determination from the Court that the terms and conditions of the Settlement Agreement were reached in good faith and are fair, reasonable, and adequate for the settlement of claims which could be asserted against the Underwriters and PWR in this action by the Plaintiff as Plan Trustee ("Trustee") as authorized by Debtor's Third Amended Chapter 11 Plan, Dated May 3, 2000, in the Jointly Administered Chapter 11 Bankruptcy Cases of BCE West L.P., Boston Chicken, Inc. ("BCI"), BC Real Estate Investments, Inc. and Affiliates (BCI, BC Real Estate Investments, Inc., and Affiliates, collectively, the "Debtors") identified as Bankruptcy Cases Nos. 98-12547 ECF CGC through 98-12570 ECF CGC (collectively "the Bankruptcy Case"); there being no other non-settling defendants left in this action and notice having been served by hand on counsel for all of the Other Defendants (as that term is defined in the Settlement Agreement); the Court having noted the absence of any objections filed by the Other Defendants and all matters submitted to it; and all capitalized terms having the same meaning as set forth and defined in the Settlement Agreement;

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Court has jurisdiction over the subject matter of this Action and the Settlement Agreement.

2. The Court finds that notice of the Settlement Agreement and proposed Approval and Bar Order was given to all of the Other Defendants. The Court further finds that the notice was reasonable and apprised the Other Defendants of the pendency of the Settlement Agreement and Approval and Bar Order and afforded them the opportunity to present objections.

3. The Court finds that: a) no Other Defendant filed an opposition to the Settlement Agreement or to the proposed form of Approval and Bar Order within the time allowed by law; b) Plaintiff has authority under the Debtor's Third Amended Chapter 11 Plan Dated May 3, 2000 to enter into the Settlement Agreement; and c) the Settlement Agreement is approved and adjudicated to be fair, reasonable and adequate with respect to the Trustee,

Gibson, Dunn &
Crutcher LLP

2

the Debtor, and the Debtor's bankruptcy estates, the Underwriters, PWR, and the Other Defendants. The Settlement Agreement, including the definitions contained therein, is incorporated by reference in this Approval and Bar Order.

4.      The Settlement Agreement is adjudicated to be a settlement entered in good faith.

5.      The Other Defendants and all other persons or entities are permanently barred and enjoined from asserting or continuing to prosecute, either directly or in any other capacity, any and all Released Claims (as defined in the Settlement Agreement) whether directly, indirectly, derivatively, representatively or in any other capacity (excluding claims to enforce the terms of the Settlement Agreement) against the UNDERWRITER/PWR RELEASED PARTIES (as defined in the Settlement Agreement). The Released Claims are compromised, settled and released as against the UNDERWRITER/PWR RELEASED PARTIES by virtue of this Approval and Bar Order.

6.      By virtue of the "good faith" nature of the Settlement Agreement approved by this Court, the UNDERWRITER/PWR RELEASED PARTIES are discharged from all Claims for contribution, indemnification, reimbursement or the like that have been or may later be brought by or on behalf of any of the Other Defendants based upon, relating to or arising out of the Released Claims. Accordingly, the Other Defendants and all other persons and entities claiming under or by the Other Defendants are permanently barred, enjoined and restrained from asserting or continuing to prosecute any Claim that constitutes a Released Claim, however styled, whether for contribution, indemnity, reimbursement or otherwise and whether arising under state, federal or common law, against any of the UNDERWRITER/PWR RELEASED PARTIES based upon, arising out of or related to the work performed by any of the UNDERWRITER/PWR RELEASED PARTIES on behalf of, or in connection with their relationship with, the Debtors or the Debtors' bankruptcy estates.

7.      With respect to any judgment that might be entered on any cause of action or claim in this action, or any pending or future adversary proceeding, contested matter or civil action filed by the Trustee or otherwise on behalf of the Debtors or the Debtors' bankruptcy

1   estates which is based upon, arises out of, or relates to the work performed by any of the

2   UNDERWRITER/PWR RELEASED PARTIES on behalf of, or in connection with their

3   relationship with, the Debtors or the Debtors' bankruptcy estates, in which there is or may be

4   a determination of fault on the part of any of the UNDERWRITER/PWR RELEASED

5   PARTIES, including but not limited to a determination of fault based on joint and several

6   liability, the Other Defendants shall receive a pro rata judgment reduction credit.  In

7   recognition of the Settlement Payment, and in light of the Trustee's, the Underwriters' and

8   PWR's intent to provide the UNDERWRITER/PWR RELEASED PARTIES with

9   comprehensive, full and complete finality with regard to any and all Claims that have been or

10  could be asserted against them as a result of their conduct or prior dealings with the Debtor or

11  the Debtors' respective bankruptcy estates, any resulting judgment reduction credit shall be

12  applied so as to preclude recovery by any party for any amount of pro rata fault attributable to

13  any UNDERWRITER/PWR RELEASED PARTIES.  With respect to each claim that goes to

14  verdict in the Litigation or in any pending or future adversary proceeding, contested matter or

15  civil action filed by the Trustee or otherwise on behalf of the Debtors or the Debtors'

16  bankruptcy estates, the verdict form shall set forth the total amount of damages and an

17  allocation of fault, if any, among all of the defendants and any other responsible persons or

18  entities, including, if and as applicable, each of the UNDERWRITER/PWR RELEASED

19  PARTIES.  The Trustee shall not seek to collect any amount on any judgment against any of

20  the Other Defendants to the extent, and only to the extent, that any such Other Defendant has

21  a right under applicable law of contribution or indemnification against any of the

22  UNDERWRITER/PWR RELEASED PARTIES.  Should the Trustee or anyone suing on

23  behalf of the Debtors or the Debtors' bankruptcy estates receive a final monetary judgment

24  which then results in any person or entity being legally entitled to require such

25  UNDERWRITER/PWR RELEASED PARTY to make payment toward that judgment, the

26  Trustee or such other person shall seek Court approval to reduce the judgment by an amount

27  sufficient to result in such UNDERWRITER/PWR RELEASED PARTY having no

28  obligation toward the judgment.  Should this Bar Order for any reason be reversed or

modified due to any appeal, challenge, motion to reconsider or other proceeding, at any trial or other proceeding involving the Released Claims at which the Trustee or anyone suing on behalf of the Debtors or the Debtors' bankruptcy estates is awarded damages, the total damages awarded the Trustee or such other persons shall be reduced in proportion to the percentage of fault, if any, allocated to any UNDERWRITER/PWR RELEASED PARTY at such trial or other proceeding.  Nothing contained in this paragraph shall prevent the Trustee from seeking to enforce a judgment against any non-settling party based on that party's joint and several liability for the total percentage of fault of all non-settling parties.

8.     Neither this Approval and Bar Order nor any term or provision of the Settlement Agreement shall be offered or received against any UNDERWRITER/PWR RELEASED PARTY or the Trustee as evidence of, or construed as or deemed to be evidence of, any presumption, concession or admission with respect to the truth of any fact alleged in or the validity of any Claim that was asserted or could have been asserted in this action.

9.     There is no just reason for delay in the entry of this Approval and Bar Order and immediate entry by the Clerk is expressly directed pursuant to Rule 54(b), Federal Rules of Civil Procedure.

10.     In accordance with Federal Rule of Civil Procedure 62, the Court authorizes Plaintiff to disburse the Settlement Payment described in Paragraph 2 of the Settlement Agreement to persons or entities eligible to receive that payment any time after ten business days have elapsed from the date the Court enters this Approval and Bar Order on the Court's docket.

11.     Jurisdiction is retained over the parties and the Settlement Agreement for all matters relating to the administration, interpretation, effectuation or enforcement of the Settlement Agreement and this Approval and Bar Order under the principles set forth in *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994).